Charles POST, Plaintiff,

v.

TEXTRON, INC., a Delaware corporation, and Homelite, Division of Textron, Inc., Defendants.

No. G79–625 CA7.

United States District Court, W. D. Michigan, S. D.

Dec. 16, 1981.

of the plaintiff's claim that the Guidelines violate the Administrative Procedure Act.

Charles F. Behler, Smith, Haughey, Rice & Roegge, Grand Rapids, Mich., for plaintiff.

Bruce M. Bieneman, Cholette, Perkins & Buchanan, Grand Rapids, Mich., for defendants.

## OPINION

**BENJAMIN F. GIBSON, District Judge.**

This is a personal injury action within the Court's diversity-of-citizenship jurisdiction. The plaintiff suffered injuries to his face and neck on December 1, 1976, when he was struck by a chain saw he was operating in his job with a Christmas tree company. Pre-trial discovery is continuing in the case.

Plaintiff has presently moved the Court for partial summary judgment in his favor as to defendants' affirmative defense of contributory negligence.[1] He contends that Michigan law, which applies in this case, holds that contributory or comparative negligence is no defense to an alleged negligent failure to provide safety equipment in the work place.

This motion presents the Court with another in a series of interesting questions about the implications of the adoption of comparative negligence in Michigan. *See Placek v. City of Sterling Heights*, 405 Mich. 638, 275 N.W.2d 511 (1979); Michigan Products Liability Act, M.C.L.A. § 600.2945 *et seq.* Prior to this change in the law, it was clear that contributory negligence was not a defense to an alleged failure to provide safety equipment. *Funk v. General Motors Corp.*, 392 Mich. 91, 220 N.W.2d 641 (1974). Nor was contributory negligence a bar to recovery on alleged negligence in the design or manufacture of a safety device. *Tulkku v. Mackworth Rees, Division of Avis Industries, Inc.*, 406 Mich. 615, 281 N.W.2d 291 (1979).

Since the substitution of comparative negligence for contributory negligence, the Michigan Court of Appeals has rendered somewhat conflicting opinions on the availability of comparative negligence as a defense to an alleged negligent failure to provide adequate safety devices. The first case to face the issue was *Timmerman v. Universal Corrugated Box Machinery Corp.*, 93 Mich.App. 680, 287 N.W.2d 316 (1979), which decided comparative negligence was no defense to an asserted negligent failure of the manufacturer to equip a "printer-slotter" machine with a shut-off device, buzzers, or other safety devices. The machine injured the plaintiff when he was operating it in the course of his employment.

The same result was reached in *Stambaugh v. Chrysler Corp.*, 96 Mich.App. 166,

---

**1.** There is a conflict of authority as to whether the court may grant a partial summary judgment on an affirmative defense. *See* 10 Wright & Miller, *Federal Practice and Procedure* § 2737, at 679–80 (1973); *Krauss v. Keibler-Thompson Corp.*, 72 F.R.D. 615 (D.Del.1976), and authorities cited therein. The alternative is to decide the issue as a Rule 12(f) motion to strike an insufficient defense, on which matters outside the pleadings are normally not considered. 10 Wright & Miller, *supra.* In *Krauss*, the court held that such a motion could not be considered under Fed.R.Civ.P. 56(d), because a motion to strike an affirmative defense did not seem to fall within the Rule 56 reference to a motion directed toward "all or any part" of a "claim". In this Court's opinion, the *Krauss* interpretation is unduly narrow. *See* 10 Wright & Miller, *supra*; 2A *Moore's Federal Practice* ¶ 12.21[3], at 2437–38 (1981). In any event, the parties have expressed no objection to a partial summary adjudication; indeed, both parties' briefs rely on matter outside the pleadings for their arguments. Under such circumstances, the Court will proceed to the merits of the motion. *See Wilkinson v. Feild*, 108 F.Supp. 541 (D.Ark.1952).

292 N.W.2d 510 (1980), which noted that any jury instruction on comparative or contributory negligence would be erroneous where a general contractor had allegedly failed to provide adequate safety devices on a catwalk from which plaintiff fell during his employment with a subcontractor in a truck plant.

This line of authority was continued in *Tulkku v. Mackworth Rees, Division of Avis Industries, Inc. (On Remand)*, 101 Mich.App. 709, 301 N.W.2d 46 (1980), which held that the damages of a plaintiff, whose hand was injured in a press which had a malfunctioning safety switch, would not be diminished by his own negligence if the liability of the defendants arose from their failure to provide adequate safety devices. The court reasoned that in *Funk* and *Tulkku*, the Michigan Supreme Court was concerned with a problem distinct from the *Placek* desire to achieve an equitable allocation of a loss—namely, the policy in the law of torts which seeks to encourage the implementation of reasonable safeguards and to foster the protection of the worker. Noting that the worker already has an incentive to work as safely as possible [2], the court reasoned that its holding eliminating any defense of comparative negligence would foster workers' safety, in keeping with the Supreme Court's emphasis in *Funk* and *Tulkku*.

The *Tulkku (On Remand)* opinion also analyzed the effect of the products liability statute, which specifically provides for a comparison and deduction of any negligence attributable to the plaintiff. M.C.L.A. § 600.2949. Observing that the Michigan Legislature did not expressly include or exclude safety device cases, despite the previous existence of *Funk*, the court held that as a matter of law, no negligence can be attributed to a plaintiff in a safety device case. The comparative negligence statute

was therefore said to be inapplicable. The court pointed to a similar result in New Jersey, a jurisdiction whose treatment of safety device cases had been cited by the Michigan Supreme Court in *Tulkku*.

In at least apparent contrast to the line of authority in *Timmerman, Stambaugh,* and *Tulkku (On Remand)*, came *Wells v. Coulter Sales, Inc.*, 105 Mich.App. 107, 306 N.W.2d 411 (1981). *Wells* held that comparative negligence was an available defense against a plaintiff whose deceased husband had drowned when the forklift he was operating in blizzard-like weather conditions slid into a pond. Rescue attempts had been unsuccessful, and it was alleged that the safety features of the cab were defective in failing to provide an adequate emergency means of access and egress. After discussing the cases above, the court reasoned as follows:

> [W]here, as here, there is no "work place" or, as in *Funk, supra,* and in each of its progeny to date, no general or subcontractor relationship nor a factory or industrial setting, the rationale of *Funk* and *Tulkku* disappears.... This is a straight products liability case, clearly unrelated to any industrial or common work area setting. Were we to apply *Funk* and *Tulkku* to these facts, we would have to do so in almost every products liability case, for we can perceive of no products liability situation in which the product is not allegedly unsafe by virtue of the defect.

105 Mich.App. at 115, 306 N.W.2d at 415.

 Thus, it appears that under the present state of Michigan law [3], the existence of a comparative negligence defense turns on whether or not the failure to provide reasonably adequate safety devices occurred "in the work place". If so, there is no such defense. The apparent justification for this distinction is that unlike the con-

---

**2.** "The worker has an incentive—the avoidance of injury to himself—to work as safely as permitted by the demands of his employment, the nature of the equipment furnished to him, and the frailties of mankind." *Tulkku (On Remand)*, 101 Mich.App. at 720, 301 N.W.2d at 51.

**3.** Leave to appeal was denied by the Michigan Supreme Court in *Stambaugh* and *Tulkku (On Remand)*. An application for leave to appeal in *Wells* is presently pending.

sumer in a straight products liability case, "They [workmen] usually have no choice but to work with the equipment at hand, though danger looms large." *Tulkku*, 406 Mich. at 620, 281 N.W.2d at 293 (quoting *Koenig v. Patrick Construction Corp.*, 298 N.Y. 313, 83 N.E.2d 133 (1948). Regardless of this Court's opinion of such a distinction, it is bound in a diversity case to follow published decisions of intermediate state appellate courts in the absence of any opinion of the highest state court, unless it is convinced by persuasive data that the highest state court would rule otherwise. *Ruth v. Bituminous Casualty Corp.*, 427 F.2d 290 (6th Cir. 1970); *Hoover Ball and Bearing v. Pinkerton's, Inc.*, 500 F.Supp. 673 (W.D. Mich.1980).

■ Here, the plaintiff's motion alleges that the accident giving rise to this lawsuit involved such a failure to provide safety equipment in a work place. Defendants rely on the *Wells* case and strenuously assert that plaintiff's injury did not occur in an "industrial or common work area setting."

The support for plaintiff's allegation is found in defendants' answer, their responses to plaintiff's Requests to Admit, and their oral deposition of the plaintiff. Defendants admit in their answer to the complaint that at the time of the accident plaintiff was engaged in his employment with the M. Walter & Company, operating a chain saw designed, manufactured, and distributed by defendants. Defendants have admitted in discovery their awareness, design, and manufacture of at least some of the safety devices proposed by plaintiff—"Safe-T-Tips", chain brakes, chain guards, and front hand guards. Most significantly, defendants in their deposition of plaintiff reverified the truth of plaintiff's statement that "On December 1, 1976, at about 5:30 P.M. at the M. Walters Warehouse in Pomona, Michigan, I was injured. The accident happened outside the warehouse, where all the semi[s] drive up to be staked for their loads of Christmas trees". Thus, it is clear that this is a safety device case in which the plaintiff was injured "in the work place"

and in which he will attempt to show that his injury resulted from the manufacturer's negligent failure to provide reasonably adequate safety equipment.

Defendants analogize this setting to that in *Wells*, where the plaintiff was operating a forklift in attempting to move a duck house "owned by his employer on the employer's property". They contrast the more industrial settings in the three cases which refused to consider comparative negligence. However, they present no reason to believe that the place "where all the semis drive up" is not a "common work area". It is clearly a work area common to at least the plaintiff and all drivers of "semi" tractor-trailers.

The Court is of the opinion that there can be no serious dispute on this issue. Merely because plaintiff's use of hazardous machinery occurred outdoors rather than under a roof is no reason to find Michigan's policy of requiring reasonably adequate safety devices in the work place inapplicable. However the distinction drawn in *Weeks* might be refined by later cases, the undisputed facts of this case are closer to those in *Timmerman, Stambaugh*, and *Tulkku* than they are to those in *Weeks*, and the result in the former cases is controlling.

Defendants point out that they believe they can demonstrate plaintiff's negligence by his own admissions in several signed statements. The fact that defendants might be capable of proving negligence on the part of the plaintiff is not a reason to decide that any negligence of the plaintiff is a legally sufficient defense to the claim he brings.

For the reasons stated, plaintiff's motion is granted, and the affirmative defense of comparative negligence shall no longer be an issue in this case.

IT IS SO ORDERED.