122 N.J. Super. 99 (1973)
299 A.2d 95
ROBERT A. DEVANEY, AN INFANT BY HIS GUARDIAN AD LITEM, JOHN R. DEVANEY AND JOHN R. DEVANEY AND JEANNE DEVANEY, INDIVIDUALLY, PLAINTIFFS,
v.
LOUIS SARNO, VOLKSWAGEN OF AMERICA, INC. AND CENTRAL VOLKSWAGEN, INC., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 8, 1973.
*101 Mr. Arthur C. Gundersdorf, attorney for plaintiffs.
Mr. John R. Kingsland, attorney for defendant Louis Sarno.
Messrs. Crummy, O'Neill, Del Deo & Dolan, attorneys for defendant Volkswagen of America, Inc.
Messrs. Shenier, Gilady & Harwood, attorneys for defendant Central Volkswagen, Inc.
TOSCANO, J.C.C.
This action arises out of an accident between autos driven by plaintiff Robert A. Devaney and defendant Louis Sarno on October 4, 1970, on East Shore Road, Warwick, New York. At the time of the accident plaintiff was operating a 1970 Volkswagen sedan that he had purchased about three weeks earlier in Fair Lawn, New Jersey, from defendant Central Volkswagen, Inc., a distributor of defendant Volkswagen of America, Inc., the manufacturer. Plaintiff settled with the defendant Sarno in the amount of $20,000 and now proceeds against the Volkswagen defendants.
Plaintiff's case against the auto manufacturer and distributor is based upon the theories of negligence, breach of express and implied warranties, and strict liability in tort for the alleged failure of defendants to provide him with a functional seat belt, which failure allegedly caused plaintiff *102 to be more seriously injured than he otherwise would have been had the seat belt been operative. Plaintiff's deposition indicates that he wore the seat belt when he first drove the car from the showroom and that upon his arrival at home he experienced difficulty in releasing the belt. He testified that it took minutes for him to unfasten the belt initially and that immediately thereafter a second attempt to release the belt was successful after "a couple of seconds" but that the mechanism was still not working in a normal fashion. Plaintiff thereafter did not attempt to use the belt and he pointed out the difficulty when he took the vehicle back to the distributor for the 1000-mile checkup about ten days later, at which time the actual mileage was 951. When the car was returned to plaintiff, he was told that the parts needed to repair the seat belt were on order and that he would be notified when they arrived. Plaintiff subsequently drove the vehicle without utilizing the seat belt.
Defendant Volkswagen of America, Inc. has filed a motion for summary judgment on the ground that plaintiff is barred from recovery since he voluntarily chose to drive the auto without the benefit of a seat belt. The usual standards for the determination of such a motion must be applied. Where it palpably appears that there is no genuine issue of material fact presented, the court is to decide the matter on the applicable law. Bowler v. Fidelity & Cas. Co. of New York, 99 N.J. Super. 184 (App. Div. 1968). All doubts in such proceedings are to be resolved in favor of the opponent of the motion. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67 (1954).
Applying these standards to the instant case, the court must assume, for purposes of this motion, that plaintiff was not operating his vehicle in a negligent manner at the time of the accident; that the defect in the seat belt was such that it was in effect unavailable to plaintiff at that time; that the defect arose through the negligence of defendant Volkswagen, and that plaintiff would have been wearing the seat belt if it had been functioning properly. Nevertheless, *103 this court concluded that defendant is entitled to summary judgment regardless of any of the three theories advanced by plaintiff.
As far as contributory negligence is concerned, plaintiff argues that there is no common law duty on the part of the occupant of a motor vehicle to use a seat belt; plaintiff cites Barry v. Coca Cola Co., 99 N.J. Super. 270 (Law Div. 1967), in support of this proposition. That case involved an attempt by a driver-defendant to assert contributory negligence on the part of a passenger-plaintiff. Such a case is decidedly different from the instant situation: there the party who had negligently caused the impact from which injuries ensued wanted to evade partial responsibility by focusing on the failure of the plaintiff to use a seat belt; here the moving defendant had nothing to do with the impact but is only collaterally involved via the seat belt issue. In any event, Judge Lynch indicated in Barry that the decision to strike the defense of contributory negligence was based in part on the fact that defendant offered no evidence as to how much the injuries were aggravated by the failure to use a seat belt. See Cierpisz v. Singleton, 230 A.2d 629 (Md. 1967), and Tom Brown Drilling Co. v. Nieman, 418 S.W.2d 337 (Tex. Civ. App. 1967). In the present case there is a proffer of testimony of an "accident reconstruction expert" to substantiate the claim that failure to use a seat belt aggravated the injuries. But here such proof is offered by plaintiff, the reverse of the usual situation!
Plaintiff, by settling with driver-defendant Sarno and proceeding against the Volkswagen defendants, has put himself in the unique position of having to argue on the one hand that it was negligence for the Volkswagen defendants to aid in the creation of a situation wherein plaintiff failed to use a seat belt, but on the other hand that it was not contributory negligence for him to drive without a seat belt. If defendant had a duty to provide for the protection of plaintiff against the injuries complained of, its duty was only coextensive with that of plaintiff, once plaintiff became *104 aware that the vehicle was not equipped with a functional seat belt. In all logic, it is inconsistent to maintain that a manufacturer must provide a working safety feature but that the individual for whose benefit the safety feature was designed may act in conscious disregard of the fact that the safety feature is in effect unavailable to perform its function.
Therefore, plaintiff should not be entitled to go to trial against the moving defendant regardless of the view taken as to the proper resolution of the current judicial debate (involved in the Barry case, supra) as to whether a driver-defendant should be entitled to assert the failure of a plaintiff to use a seat belt as a defense or in mitigation of damages. The resolution of that issue depends upon whether a plaintiff as an occupant of a motor vehicle has a duty to see that he is secured by a seat belt before embarking on a trip in the vehicle. (The courts of several states that have considered the matter are in disagreement: it was held that the issue could be submitted to the trier of fact in Bentzler v. Braun, 34 Wis.2d 362, 149 N.W.2d 626 (Sup. Ct. 1967), and in Sams v. Sams, 247 S.C. 467, 148 S.E.2d 154 (S. Car. Sup. Ct. 1966); it was held that evidence of the failure of a plaintiff to wear a seat belt was not admissible in Robinson v. Lewis, 254 Or. 52, 457 P.2d 483 (Or. Sup. Ct. 1969), and Miller v. Miller, 273 N.C. 228, 160 S.E.2d 65 (Sup. Ct. 1969).) If a plaintiff has no such duty to take steps for his own safety in this respect, he cannot logically assert that the manufacturer has such a duty; if, on the other hand, a plaintiff has such a duty, the duty was breached in this case and plaintiff was consequently guilty of contributory negligence.
In anticipation of an objection that might be made to the approach taken by the court in this regard, it should be pointed out that the enactment of the Federal Motor Vehicle Safety Standards, 32 Fed. Reg. 2408 (1967), did not impose upon the manufacturer a duty the breach of which would entitle plaintiff to the relief that he claims. The federal regulation required only that manufacturers incorporate *105 approved sets of seat belts in their new vehicles for the benefit of the driving public at large. Clearly there was no violation of the federal regulation in this case. The duty to avoid installing a defective seat belt arises out of the common law and/or out of the law of warranties and extends to one who relies on an assumption that the item is free of defects. That is not the case here; plaintiff did not rely on the seat belt in question. The matter would, of course, be different if plaintiff had unknowingly used the seat belt and been injured due to the failure of the belt to unfasten normally, which is the specific defect that existed in this case.
An alternative basis for the holding that plaintiff cannot prevail on the negligence count is the fact that the failure to use the seat belt was not a proximate cause of any of the injuries; rather, all injuries were proximately caused solely by the negligence of the driver-defendant Sarno, with whom a settlement has been reached. Such a theory would foreclose any inquiry into whether plaintiff or the Volkswagen defendants or both were responsible for the failure of plaintiff to be wearing the seat belt at the time of the accident. The Barry opinion did not rule out the possibility that it might be proper, as a general rule, to disallow evidence of a plaintiff's nonuse of a seat belt on the grounds that at this point it is for the Legislature, if it so chooses, to declare that the use of seat belts is mandatory. (Courts of other states have taken the position that the matter is one for the consideration of the Legislature. See, e.g., Lipscomb v. Diamiani, 226 A.2d 914 (Del. Super. Ct. 1967), and Brown v. Kendrick, 192 So.2d 49 (Fla. App. Ct. 1966).) Such a general rule would leave responsibility for all injuries sustained with the driver-defendant, whose negligence would stand as the sole proximate cause of such injuries. Under such an approach, if plaintiff had gone to trial against Sarno, the latter would have been precluded from asserting that plaintiff's failure to use a seat belt contributed to the seriousness of his injuries. As far as the settlement *106 with Sarno is concerned, it is difficult to imagine that the figure agreed upon involved a reduction based upon the assumption that some of plaintiff's injuries were due to the failure to use a seat belt.
This court finds that the negligence count in the complaint is insufficient based upon three alternative theories, alluded to above, each of which is sufficient in itself to support this conclusion: (1) lack of duty on the part of the moving defendant, (2) contributory negligence on the part of plaintiff, or (3) lack of proximate causation between movant's conduct and plaintiff's injuries.
Plaintiff also proceeds against defendants on theories of breach of warranty and strict liability in tort. Our Supreme Court has held that contributory negligence is available as a defense in actions based on such theories. Maiorino v. Weco Products Co., 45 N.J. 570 (1965); Cintrone v. Hertz Truck Leasing, 45 N.J. 434 (1965). However, since this court has not held that contributory negligence is the sole basis for the insufficiency of the negligence count, the court will not rely on that theory in the following discussion of warranty and strict liability.
As far as breach of warranty is concerned, N.J.S.A. 12A:2-714 provides the buyer with a remedy for breach of warranty whereby he can recover "consequential damages," which include, according to N.J.S.A. 12A:2-715(2)(b), "injury to person or property proximately resulting from any breach of warranty" (emphasis added). Assuming that a warranty was breached in that plaintiff received a vehicle with an inoperable seat belt, the question is whether any of plaintiff's injuries proximately resulted from the breach. It would probably be better, from plaintiff's point of view, to analyze the defective product as the vehicle itself rather than the seat belt, since it is difficult to conclude that injury could ensue from a defect in the seat belt in view of the fact that the seat belt was not used. Nevertheless, it is apparent to this court that the assumed breach did not proximately cause plaintiff's injuries either because, as suggested *107 above, the sole proximate cause was the negligence of Sarno or because the conduct of plaintiff himself contributed to the injuries. With respect to the latter point, the New Jersey Study Comment on N.J.S.A. 12A:2-715 contains the following relevant language: "* * * Thus, if the buyer's own fault or negligence contributes to the injury (e.g., by using the goods with knowledge of their defects), he cannot recover consequential damages, because such damages are not proximately due to the breach of warranty." (Emphasis added).
Plaintiff's count in strict liability is presumably based upon Restatement, Torts 2d, § 402A at 347 (1965), which provides in part that a seller (or manufacturer) is liable for physical harm caused to the ultimate user by "a defective condition unreasonably dangerous to the user" that existed in the product in the hands of the seller. The comments to the cited section are helpful in determining whether the section is applicable to a given case. Again, the case will be analyzed in terms of the vehicle itself as the allegedly defective product to avoid the difficulty referred to in the preceding paragraph. Comment (g) qualifies "defective condition" in that it points out that the condition must be one "not contemplated by the ultimate consumer, which will be unreasonably dangerous to him" (emphasis added). Clearly, in this case plaintiff was aware of the condition since he admits as much in his deposition. Furthermore, there is some doubt that the vehicle was "unreasonably dangerous" merely because one of the seat belts was not functioning properly. Comment (i) explains the meaning of the phrase as follows: "* * * The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Can it be said at present that the consumer would consider a vehicle that lacks seat belts a dangerous product, keeping in mind that few of the vehicles manufactured prior to the government regulations are equipped with seat *108 belts? Clearly, the lack of seat belts is dangerous if an accident occurs, but with respect to any individual driver the occurrence of an accident is improbable enough that every injury-preventing device need not be provided. Finally, Comment (n) entitled "Contributory Negligence," is worthy of mention. It contains the following relevant language:
* * * Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence. On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery.
With reference to the quoted language, one may inquire whether plaintiff can be charged with "proceeding unreasonably," but the answer to that depends upon how dangerous it is to drive without the benefit of a seat belt. To the extent that plaintiff might contend that he acted reasonably, he must at the same time concede that the "defect" did not constitute a "danger," which in turn renders section 402A inapplicable since it requires an "unreasonably dangerous" condition.
There are numerous reported cases involving actions based upon breach of warranty and strict liability in which plaintiffs were denied recovery due to their own conduct in proceeding to use a product despite a known defect in the same. See Cintrone v. Hertz Truck Leasing, supra, and Bereman v. Burdolski, 204 Kan. 162, 460 P.2d 567 (Sup. Ct. 1969), in each of which a plaintiff continued to use a vehicle with knowledge of difficulties with the brakes; Baker v. Rosemurgy, 4 Mich. App. 195, 144 N.W.2d 660 (Ct. App. 1966), in which a plaintiff continued to use a rifle with knowledge of a defective safety; Barefield v. La Salle *109 Coca Cola Bottling Co., 370 Mich. 1, 120 N.W.2d 786 (Sup. Ct. 1968), in which a plaintiff continued to drink from a bottle after having discovered glass particles in the beverage. The instant case may be an even stronger one for nonliability of defendant than the cited cases since the allegedly defective item brought about the injuries only after the intervention of the negligence of a third party (Sarno), which would tend to exculpate defendant for its earlier conduct; the cited decisions involved no such intervening negligence.
Another recent decision involving facts analogous to the situation herein is Burkhard v. Short, 28 Ohio App.2d 141, 275 N.E.2d 632 (Ct. App. 1971). There plaintiff was injured while a passenger in a 1965 Chevrolet which collided with another vehicle. Plaintiff was thrown forward on impact against an unpadded steel cowl or dashboard. Suit was brought against General Motors Corporation on strict liability theory for an alleged design defect, namely, the lack of padding on the dashboard. Such padding was available as an optional item at the time of purchase of the vehicle in question. Summary judgment in favor of General Motors was affirmed. Section 402A was held inapplicable, the court distinguishing cases of hidden defects and emphasizing the fact that the lack of padding was obvious. The court also spoke in terms of lack of duty on the manufacturer's part: "* * * Under the facts of the case before us, the manufacturer has no duty to the passenger injured by contact with an obviously unpadded cowl which could have been made `safer' by padding and by recessing the same." 275 N.E.2d at 637. Again, the instant case may be even stronger for nonliability in that the seat belt was rendered unavailable due to inadvertence (at most) of defendant, whereas in Burkhard the lack of padding was an intentional omission on the part of General Motors and therefore more appropriate as a basis for culpability.
The result reached in this case is not an unreasonable one. The special situation involved in Bexiga v. Havir Manufacturing Corp., 60 N.J. 402 (1972), cited by plaintiff, is *110 not presented here. In that case plaintiff was injured while operating for his employer a punch press which was devoid of allegedly needed safety features, and the Supreme Court held that it was error to disallow the case from going to the jury. Aside from other distinguishing aspects, plaintiff was there under a certain compulsion to operate the machine by virtue of the fact of his employment; here, plaintiff was under no compulsion and was in fact, according to his own deposition, on a late night pleasure trip at the time of the accident. Furthermore, plaintiff had available to him the clear alternative of asserting his rights against the Volkswagen dealer immediately upon discovering the defect and demanding the transfer of an operable seat belt from another vehicle in stock or demanding the use of another vehicle pending correction of the seat belt problem.
For the foregoing reasons, summary judgment is granted in favor of defendant Volkswagen of America, Inc. and an appropriate order should be submitted.